Harry A. Woods, Jr., Esq.
Bruce W. Day, Esq.
Mary H. Tolbert, Esq. (*pro hac vice* pending)
CROWE & DUNLEVY, P.C.
20 North Broadway, Suite 1800
Oklahoma City, OK 73102
Telephone:  (405) 235-7700
Facsimile:  (405) 239-6651

*Attorneys for Duoyuan Printing, Inc., Wenhua Guo, Xiqing Diao,
Lianjun Cai, and Punan Xie*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEFF PERRY and SCOTT P. COLE, On Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> – against – <br><br> DUOYUAN PRINTING, INC., WENHUA GUO, XIQING DIAO, BAIYUN SUN, WILLIAM D. SUH, CHRISTOPHER P. HOLBERT, LIANJUN CAI, PUNAN XIE, JAMES ZHANG, PIPER JAFFRAY & CO., ROTH CAPITAL PARTNERS, LLC, and FRAZER, LLP, <br><br> Defendants. | Case No. 10-CV-7235 (GBD) <br><br> **ECF Case** |
| PIPER JAFFRAY & CO., and ROTH CAPITAL PARTNERS, LLC, <br><br> Cross-Plaintiffs, <br><br> – against – <br><br> DUOYUAN PRINTING, INC., WENHUA GUO, XIQING DIAO, BAIYUN SUN, WILLIAM  D. SUH, CHRISTOPHER P. HOLBERT, LIANJUN CAI, PUNAN XIE, JAMES ZHANG, and FRAZER, LLP, <br><br> Cross-Defendants. | **MEMORANDUM OF LAW IN SUPPORT OF DYP DEFENDANTS' MOTION TO DISMISS THE CROSS-COMPLAINT OR, IN THE ALTERNATIVE, <u>MOTION TO STAY</u>** |

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ...................................................................................... 1

FACTS ............................................................................................................................. 1

ARGUMENT AND AUTHORITIES............................................................................... 6

I.      ON ITS FACE, THE SETTLEMENT BARS THE UNDERWRITERS'
        CLAIMS AGAINST THE DYP DEFENDANTS, OTHER THAN THE
        CONTRACTUAL CLAIM FOR ADVANCEMENT AND REIMBURSE-
        MENT FOR COSTS AND FEES INCURRED IN DEFENDING THIS
        LITIGATION ......................................................................................................... 7

II.     THE UNDERWRITERS' CLAIMS FAIL AS A MATTER OF LAW ................. 9

        A.      The Underwriters cannot maintain their claim against DYP and
                Guo for contractual indemnity because the indemnification
                clause of the Underwriting Agreement is unenforceable .............................. 9

        B.      The Underwriters' contribution claim is unnecessary and impermissible
                because the law grants the Underwriters a judgment credit ........................ 14

        C.      Public policy prohibits the Underwriters from seeking indemnity
                from the DYP Defendants for the Underwriters' alleged violations
                of the Securities Act  .................................................................................. 15

        D.      The Underwriters cannot maintain an action for breach of contract
                against DYP ................................................................................................ 17

        E.      The Underwriters do not, and cannot, plead a special relationship to
                sustain their negligent misrepresentation claim  ......................................... 19

III.    ALTERNATIVELY, THE COURT SHOULD STAY THE UNDERWRITERS'
        CROSS-CLAIMS UNTIL THE PLAINTIFFS' CLAIMS AGAINST THE
        UNDERWRITERS ARE RESOLVED .................................................................... 21

CONCLUSION .............................................................................................................. 22

## TABLE OF AUTHORITIES

Page(s)

CASES

*Ainbinder v. Money Center Fin. Group, Inc.*,
   2013 WL 1335997 (E.D.N.Y. Feb. 28, 2013), rep. & recomm. adopted by
   2013 WL 1335893 (E.D.N.Y. Mar. 25, 2013).................................................................18

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...........................................................................................................6

*ATSI Commc'ns v. Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007) ..............................................................................................10

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...........................................................................................................6

*Bonacci v. Lone Star Intern. Energy, Inc.*,
   No. 98 Civ. 0634 (HB), 1999 WL 76942 (S.D.N.Y. Feb. 16, 1999).................................16

*Del-Val Fin. Corp. Secs. Litig.*,
   868 F. Supp. 547 (S.D.N.Y. 1994) ...................................................................................15

*Dember Const. Corp. v. Staten Island Mall*,
   56 A.D.2d 768, 392 N.Y.S.2d 299 (1st Dep't 1977).......................................................19

*Eichenholtz v. Brennan*,
   52 F.3d 478 (3d Cir. 1995) .................................................................................12, 13, 16

*Fed. Housing Fin. Agency v. UBS Am., Inc.*,
   858 F. Supp. 2d 306 (S.D.N.Y. 2012) .........................................................................19, 20

*Flaherty Funding Corp. v. Johnson*,
   105 A.D.3d 1445 (4th Dep't 2013)...................................................................................20

*Gerber v. MTC Electronic Techs. Co.*,
   329 F.3d 297 (2d Cir. 2003) .............................................................................................7, 8

*Globus v. Law Research Service, Inc.*,
   418 F.2d 1276 (2d Cir. 1969), *cert. denied*, 397 U.S. 913 (1970)...................11, 12, 13, 16, 17

*In re HealthSouth Corp. Sec. Litig.*,
   572 F.3d 854 (11th Cir. 2009) ............................................................................................7

*In re Heritage Bond Litig.*,
   546 F.3d 667 (9th Cir. 2008) ..............................................................................................7

*In re PNC Fin. Servs. Grp., Inc.,*
 440 F. Supp. 2d 421 (W.D. Pa. 2006) ....................................................................... 8

*In re U.S. Oil & Gas Litig.,*
 967 F.2d 489 (11th Cir. 1992) ................................................................................. 8

*In re WorldCom, Inc. Sec. Litig.,*
 No. 02 Civ. 3288 (DLC), 2005 WL 408137 (S.D.N.Y. Feb. 22, 2005) .................. 20

*JP Morgan Chase Bank v. Winnick,*
 350 F. Supp. 2d 393 (S.D.N.Y. 2004) ..................................................................... 21

*Karestos v. Cheung,*
 670 F.Supp. 111 (S.D.N.Y.1987) ....................................................................... 18, 19

*Katz v. China Century Dragon Media, Inc.,*
 287 F.R.D. 575 (C.D. Cal. 2012) ............................................................................ 22

*KBL Corp. v. Arnouts,*
 646 F. Supp. 2d 335 (S.D.N.Y. 2009) ..................................................................... 15

*LaSalle Bank v. Citicorp Real Estate,*
 No. 02 Civ. 7868 (HB), 2003 WL 1461483 (S.D.N.Y. Mar. 21, 2003) .................. 21

*Laventhos, Krekstein, Horwath & Horwath v. Horwitch,*
 637 F.2d 672 (9th Cir. 1980) ............................................................................ 12, 16

*MacArthur Construction Corp. v. Coleman,*
 91 A.D.2d 906, 457 N.Y.S.2d 530 (1st Dep't 1983) ............................................... 18

*MBIA Ins. Corp. v. Countrywide Home Loans, Inc.,*
 87 A.D.3d 287 (1st Dep't 2011) .............................................................................. 20

*Morgan Stanley & Co. v. J.P. Morgan Chase Bank, NA,*
 645 F. Supp. 2d 248 (S.D.N.Y. 2009) ....................................................................... 6

*Odette v. Shearson, Hammill & Co.,*
 394 F. Supp. 946 (S.D.N.Y. 1975) .......................................................................... 16

*Saxton Communication Group, Ltd. v. Valassis Inserts, Inc.,*
 1995 WL 679256 (S.D.N.Y. Nov. 15, 1995) ........................................................... 19

*Soto v. Federal Express Corp.,*
 2008 WL 305017 (E.D.N.Y. Feb. 1, 2008) .............................................................. 18

*Smith v. Positive Productions,*
 419 F. Supp. 2d 437 (S.D.N.Y. 2005) ..................................................................... 19

iii

*Wisconsin Investment Board v. Ruttenberg*,
  300 F. Supp. 2d 1210 (N.D. Ala. 2004)..................................................................8

**STATUTES & RULES**

15 U.S.C. § 77k(b)(3) ...............................................................................................21

15 U.S.C. § 78u-4(f)(7)(A) (2012) ............................................................................7

Private Securities Litigation Reform Act ("PSLRA") .......................................3, 7, 14, 21

Sections 11 and 12(a)(2) of the Securities Act .......................................................2, 5

Securities Act of 1934 ("Securities Act")..........................................................passim

Securities Exchange Act of 1934 ("Exchange Act").......................................2, 11, 14

Rule 12(b)(6) Federal Rules of Civil Procedure......................................................1

**OTHER AUTHORITIES**

Helen L. Scott, *Resurrecting Indemnification: Contribution Clauses in Underwriting
  Agreements*, 61 N.Y.U.L.Rev. 223 (1986) ...........................................................13

2502058.1

Duoyuan Printing, Inc. ("DYP"), Wenhua Guo, Xiqing Diao, Lianjun Cai, and Punan Xie (collectively, the "DYP Defendants"), hereby respectfully submit this memorandum of law in support of their motion to dismiss the cross-complaint ("Cross-Complaint") filed by Piper Jaffray & Co. and Roth Capital Partners, LLC (collectively, the "Underwriters") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure or, in the alternative, to stay pending resolution of Plaintiffs' claims against the Underwriters. In support of this motion, the DYP Defendants would show the Court as follows:

## PRELIMINARY STATEMENT

Plaintiffs and the DYP Defendants have settled all claims between them. The Court has preliminarily approved that settlement, and a hearing on the motion for final approval of the settlement has been set for November 13, 2013. Notice of Motion [Dkt. #144]. The Underwriters have now asserted cross-claims against the DYP Defendants attempting to drag them back into this case without asserting a single new substantive allegation against them. Moreover, this effort is completely unnecessary. By filing the cross-claims, the Underwriters merely seek to ensure that they will not be liable for more than their share of any liability in the event a judgment is entered against them on the Plaintiffs' claims. Those rights are adequately protected, however, by the settlement itself and by existing law. Because the Underwriters' claims against the DYP Defendants are, with a narrow exception, precluded by the specific terms of the settlement agreement, and because all of the Underwriters' claims are foreclosed by controlling legal authorities, this Court should dismiss the cross-complaint against the DYP Defendants. Alternatively, the Court should stay the cross-claims pending resolution of Plaintiffs' claims against the Underwriters.

## FACTS

### Plaintiffs' Consolidated Complaint

On February 16, 2012, lead plaintiffs ("Plaintiffs") filed a consolidated complaint ("Complaint") against DYP, its auditor, certain of its directors and officers, and the Underwriters, alleging that material misstatements and omissions existed in the offering materials disseminated in connection with DYP's initial public offering.[1] Complaint at ¶ 1 [Dkt. #64]. Plaintiffs asserted various claims under the Securities Act of 1934 ("Securities Act") and Securities Exchange Act of 1934 ("Exchange Act") against DYP and its officers and directors. *Id.* at ¶¶ 149-59, 168-202. The DYP Defendants vigorously dispute those allegations.  With respect to the Underwriters, Plaintiffs brought two claims under the Securities Act:  a claim for violation of Section 11 of the Securities Act and a claim for violation of Section 12(a)(2) of the Securities Act. *Id.* at ¶¶ 175-96. Plaintiffs allege that the Underwriters failed to make a reasonable investigation to ensure that DYP's Registration Statement and Prospectus did not contain any material misstatements or omissions. *Id.* at ¶ 82.

### Preliminary Approval of the Settlement

On June 28, 2013, Plaintiffs and DYP, Guo, Diao, Cai, Xie, William D. Suh, and Christopher Holbert (collectively, "Settling Defendants") entered into a stipulation of settlement, which was submitted to the Court. On July 19, 2013, the Underwriters filed a motion objecting to preliminary approval of the Settlement on a number of grounds. *See* Underwriters' Mem. Of Law in Opp. To Prelim. App. [Dkt. #119]. Foremost among them was the contention that the Settlement did not provide the Underwriters a judgment credit to compensate for the Settlement extinguishing the Underwriters' right to contribution and indemnity. *Id.* at 6-15. The Underwriters also objected to the Settlement on the ground that it did not subject the Settling

---

[1] Joseph Sciarro, Scott Cole, and Richard Pearson were appointed as lead plaintiffs in this case.

2

Defendants to the continuing jurisdiction of the Court for discovery purposes. *Id.* at 13-14. In a subsequent brief filed in opposition to the Settlement, the Underwriters argued that they were entitled to a credit equal to the greater of the settlement amount or the Settling Defendants' share of responsibility as determined at trial pursuant to the Private Securities Litigation Reform Act ("PSLRA") and Second Circuit case law. Underwriters' Br. in Further Opp. at 3-4 [Dkt. #121].

Plaintiffs opposed the Underwriters' position regarding the judgment credit, arguing that the Settlement was silent as to the appropriate measure of such a credit and properly left that issue to prevailing law. Ex. 1 at 2 [Plf. Ltr, dated July 23, 2013].[2] The Settling Defendants also challenged the Underwriters' request that they be subject to the jurisdiction of the Court for discovery purposes. Ex. 2 at 1 [Settling Defs' Ltr., dated July 23, 2013].

During a July 24, 2013 hearing, the Court addressed the Underwriters' objections and challenged the Underwriters' basis for bringing a contribution claim given that they would be entitled to a judgment credit:

> MR. KRAUSS: The outstanding issues are two-fold. And I'll begin with the one that we emphasized from the outset in our briefing . . . . [T]hat the partial settlement provides for a bar of contribution and indemnity claim[s] by the [Underwriters] against the [Settling Defendants].
>
> THE COURT: Let me stop you right there and ask you why that's relevant whatsoever because the question is not whether or not there's contribution. The question is whether, if a judgment is rendered against your client, whether or not you have the opportunity to present to the jury that, one, you should only be proportionately liable, and, two, whether you're found to be proportionately liable or not, you should get a credit for the amount of money that was contributed by other potentially liable parties, the defendants in the settlement. If the jury determines that you are only 50 percent liable and that's your share or you are held to be liable and you get a credit for the settlement amount, what's your issue?

Transcript (7/24/13) at 4:1-20 [Dkt. #136]. The Court stated that, if a judgment were entered against the Underwriters, they would be entitled to a credit to the extent the judgment exceeded

---

[2] References to "Ex. __" are to the exhibits attached to the Declaration of Harry A. Woods, Jr., Esq., filed contemporaneously herewith.

the Underwriters' proportionate fault, thereby "eliminat[ing] any need for contribution or indemnity[.]" *Id.* at 8:24-9:1.

Aside from addressing the Underwriters' concern regarding their entitlement to a judgment credit, the Court denied the Underwriters' request that the Court retain jurisdiction over the Settling Defendants for purposes of discovery, stating that the Underwriters had not articulated a basis for such "unusual relief." *Id.* at 25:11.

Ultimately, the Court preliminarily approved the Settlement subject to certain revisions, including the insertion of a provision that expressly recognized the Underwriters' right to a judgment credit. Order (7/31/13) at 1 [Dkt. #124]. As preliminarily approved, the provision in the Settlement that contains the bar order and judgment credit language reads as follows:

> **Upon the Effective Date of the Settlement, all claims for contractual contribution, or other contribution or indemnification, except claims for any contractual right for advancement and reimbursement for costs and fees incurred in defending the Litigation, by other alleged joint tortfeasors, including the Non-Released Defendants, or their Related Parties, against any of the Released Parties based upon, arising out of, relating to, or in connection with the Released Claims of the Class or any Class Member are thereby barred, extinguished, discharged, satisfied and otherwise rendered unenforceable to the full extent permitted by law, and the future filing of any such claims enjoined.** Upon the Effective Date of the Settlement, all claims for contractual contribution, or other contribution or indemnification, except claims for any contractual right for advancement and reimbursement for costs and fees incurred in defending the Litigation, by the Released Parties against any of the other alleged joint tortfeasors, including the Non-Released Defendants, or their Related Parties based upon, arising out of, relating to, or in connection with the Released Claims of the Class or any Class Member are thereby barred, extinguished, discharged, satisfied and otherwise rendered unenforceable to the full extent permitted by law, and the future filing of any such claims enjoined. **To the extent required by law, the Non-Released Defendants shall be entitled to a judgment credit in an amount that is the Settlement Amount or the proportionate share of the Settling Defendants' fault as proven at trial.**

Settlement Agreement at ¶ 3(c) (emphasis added) [Dkt. #134].

The fairness hearing to finally approve the Settlement is scheduled for November 13, 2013. Notice of Motion [Dkt. #144].

**The Underwriters' Cross-Complaint**

  After the Court denied the Underwriters' motion to dismiss the Complaint in its entirety, *see* Order (8/22/13) [Dkt. #135], the Underwriters filed an answer and cross-complaint. *See* Underwriters' Answer & Cross-Complaint [Dkt. #141]. The Cross-Complaint asserts five claims against the DYP Defendants: (1) a claim for contractual indemnity against DYP and Guo, *id.* at ¶¶ 29-44; (2) a claim for contribution, *id.* at ¶¶ 46-49; (3) a claim for indemnification, *id.* at ¶¶ 50-53; (4) a claim for breach of contract against DYP alone, *id.* at ¶¶ 54-59; and (5) a claim for negligent misrepresentation, *id.* at ¶¶ 60-65. The gravamen of the Cross-Complaint is that the Underwriters reasonably relied on the Settling Defendants' representations that the Registration Statement and Prospectus did not contain any material misstatements or omissions. *Id.* at ¶ 28. The Underwriters appear to take the position that, to the extent Plaintiffs prevail on their Section 11 and Section 12(a)(2) claims against them, the Underwriters will be entitled to shift all or some of their liability onto the DYP Defendants. *Id.* at ¶¶ 48, 52.

  The claim for contractual indemnity against DYP and Guo is based upon the terms of the DYP Underwriting Agreement relating to the sale of securities at issue in this case. Ex. 3, Underwriting Agreement at ¶ 6(a). With respect to the contribution claim, the Underwriters do not identify any basis for contribution against the DYP Defendants except to allege that they would be entitled to such rights under "state law and/or federal law[.]" Cross-Complaint at ¶ 47 [Dkt. #141]. Similarly, the indemnification claim alleges that the Underwriters are entitled to "complete indemnity" without identifying any statute or agreement that provides for such a right. *Id.* at ¶ 52. The Underwriters merely allege that the Settling Defendants were the "primary actors" with knowledge of the alleged misstatements and omissions and that the Underwriters' liability under the Securities Act would only be a form of "derivative" liability. *Id.* at ¶¶ 51, 52.

With respect to the negligent misrepresentation claim, the Underwriters allege that the DYP Defendants owed the Underwriters a duty of care to provide them with accurate and truthful information in the Registration Statement and Prospectus. *Id.* at ¶ 63. The Underwriters speculate that, to the extent the Plaintiffs prove that DYP's offering materials contained material misstatement or omissions, the Underwriters would be damaged. *Id.* at ¶ 65. The Underwriters, however, do not allege how they would be purportedly damaged apart from having to satisfy a judgment to Plaintiffs. *Id.* The same is true with regard to the claim for breach of contract against DYP, which alleges that DYP breached its contractual obligation to provide the Underwriters with accurate and truthful information in the Registration Statement and Prospectus. *Id.* at ¶ 55.

Because none of these claims has any merit, the DYP Defendants have filed the present motion to dismiss.

## ARGUMENT AND AUTHORITIES

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007)). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks omitted); *see also Morgan Stanley & Co. v. J.P. Morgan Chase Bank, NA*, 645 F. Supp. 2d 248, 254 (S.D.N.Y. 2009) (applying *Twombly/Iqbal* standard to motion to dismiss cross-claims).

I. **ON ITS FACE, THE SETTLEMENT BARS THE UNDERWRITERS' CLAIMS AGAINST THE DYP DEFENDANTS, OTHER THAN THE CONTRACTUAL CLAIM FOR ADVANCEMENT AND REIMBURSEMENT FOR COSTS AND FEES INCURRED IN DEFENDING THIS LITIGATION.**

The Underwriters' claims for contribution and indemnification, other than the contractual claim for advancement and reimbursement for costs and fees incurred in defending this litigation, are barred by the Settlement Agreement's plain language, which provides that:

> Upon the Effective Date of the Settlement, all claims for contractual contribution, or other contribution or indemnification, except claims for any contractual right for advancement and reimbursement for costs and fees incurred in defending the Litigation, by other alleged joint tortfeasors, including the Non-Released Defendants, or their Related Parties, against any of the Released Parties based upon, arising out of, relating to, or in connection with the Released Claims of the Class or any Class Member are thereby barred, extinguished, discharged, satisfied and otherwise rendered unenforceable to the full extent permitted by law, and the future filing of any such claims enjoined.

Settlement Agreement at ¶ 3(c) [Dkt. #134]. This language could not be clearer and is consistent with the PSLRA and case law. *See* 15 U.S.C. § 78u-4(f)(7)(A) (2012) (mandating the entry of a bar order against future claims for contribution upon a court's approval of a settlement); *see also Gerber v. MTC Electronic Techs. Co.*, 329 F.3d 297, 305 (2d Cir. 2003) (noting that settlement bar order may bar both contribution and indemnification claims); *accord In re HealthSouth Corp. Sec. Litig.*, 572 F.3d 854, 860 (11th Cir. 2009) ("[T]here is case law following the effective date of the PSLRA approving bar orders that not only bar contribution claims, but also bar such indemnification claims."); *In re Heritage Bond Litig.*, 546 F.3d 667, 677 (9th Cir. 2008) (noting that federal common law permits a district court to bar a non-settling defendant's indemnification claims).

The Settlement also bars the Underwriters from asserting the breach of contract claim against DYP and the negligent misrepresentation claim against the DYP Defendants because these claims are nothing more than a "disguised" contribution or indemnity claims. *See Gerber*,

329 F.3d at 305. Courts consistently dismiss state law claims where a non-settling defendant merely seeks damages that equal its liability to the plaintiff. *See, e.g., In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 495 (11th Cir. 1992) (stating that the non-settling defendant's "fraud and negligence claims 'are nothing more than claims for contribution or indemnification with a slight change in wording' [and] properly [were] extinguished . . . in the settlement bar order"); *In re PNC Fin. Servs. Grp., Inc.*, 440 F. Supp. 2d 421, 450 (W.D. Pa. 2006) ("[S]tate law claims by a non-settling defendant seeking damages for what in essence are injuries arising from its own violations of the federal securities laws likewise properly are extinguished no matter how they are styled or denominated.") (internal quotations omitted); *Wisconsin Investment Board v. Ruttenberg*, 300 F. Supp. 2d 1210, 1219 (N.D. Ala. 2004) (approving bar order that extinguished a non-settling defendant's claims against a settling defendant to the extent those claims arose out of the transactions and occurrences forming the investors' securities fraud class action). In the words of the Second Circuit, state law claims that do not allege "independent damages" are properly barred. *Gerber*, 329 F.3d at 307 (internal quotations omitted). Here, the Cross-Complaint contains no allegation that the Underwriters are seeking damages independent of their potential liability to Plaintiffs for alleged violations of the Securities Act, other than non-recoverable "reputation" damages under the breach of contract claim.

Dismissal of the Underwriters' claims will further the objectives of the Settlement by giving the DYP Defendants the peace that they and the other Settling Defendants bargained for. The Underwriters' rights—including their right to a judgment credit—are fully protected by the Settlement and existing law. This is particularly true here where the Underwriters have already challenged the Settlement on numerous grounds and obtained certain concessions from Plaintiffs and Settling Defendants. Moreover, the Court has already addressed and ruled on the

Underwriters' preliminary objections to the Settlement after considering the Underwriters' numerous rounds of briefing. There is no principled basis from which to conclude that the Settlement language barring the contribution, indemnification, and negligent misrepresentation claims asserted against the DYP Defendants would change in the future. Lastly, it bears mentioning that briefing on this motion will be complete before the fairness hearing scheduled for November 13, 2013.  Any objections to the Settlement that the Underwriters wish to litigate (or, more accurately, re-litigate) will also be fully briefed by that date.  Thus, the scope of the Settlement's bar order will be ripe for determination and may be resolved at the fairness hearing.

Accordingly, there is no reason to delay ruling on this motion. Because the Underwriters' claims for indemnification, contribution, and negligent misrepresentation are barred by the Settlement Agreement, this Court should dismiss all such claims with prejudice.

## II.   THE UNDERWRITERS' CLAIMS FAIL AS A MATTER OF LAW.

The only claim not <u>procedurally</u> barred by the Settlement Agreement is the Underwriters' contractual claim *against DYP and Guo alone* for advancement of, and reimbursement for, costs and fees incurred in defending this litigation, which are specifically excepted from the bar order. Settlement Agreement at ¶ 3(c). As shown below, however, this claim, as well as the Underwriters' other claims against the DYP Defendants, are barred by Second Circuit authorities and should be dismissed.

### A.   The Underwriters cannot maintain their claim against DYP and Guo for contractual indemnity because the indemnification clause of the Underwriting Agreement is unenforceable.

In Count I of the Cross-Claim, the Underwriters purport to bring a contractual claim for indemnity against DYP and Guo. Cross-Complaint at ¶¶ 29-44 [Dkt. #141]. This claim is based upon a clause entitled "Indemnification and Contribution" in the Underwriting Agreement. That clause provides:

9

**The Company and Mr. Wenhua Guo (the "Controlling Person"), jointly and severally, agree to indemnify and hold harmless each Underwriter**, its affiliates, directors and officers and each person, if any, who controls such Underwriter within the meaning of Section 15 of the Act or Section 20 of the Exchange Act, against any losses, claims, damages or liabilities, joint or several, to which such Underwriter may become subject, under the Act or otherwise (including in settlement of any litigation if such settlement is effected with the written consent of the Company and/or such Controlling Person, as the case may be), insofar as such losses, claims, damages or liabilities (or actions in respect thereof) arise out of or are based upon an untrue statement or alleged untrue statement of a material fact contained in the Registration Statement, including the information deemed to be a party of the Registration Statement at the time of effectiveness and at any subsequent time pursuant to Rules 430A and 430(C) of the Rules and Regulations, if applicable, any Preliminary Prospectus, the Time of Sale Disclosure Package, the Prospectus, or any amendment or supplement thereto, any Issuer Fee Writing Prospectus or in any material or information provided to investors by, or with the approval of, the Company in connection with the marketing of the offering of the Shares . . . or arise out of or are based upon the omission or alleged omission to state therein a material fact required to be state therein or necessary to make the statements therein not misleading, **and will reimburse each Underwriter for any legal or other expenses reasonably incurred by it in connection with investigating or defending against any such loss, claim, damage, liability or action** . . . .

Ex. 3, Underwriting Agreement at § 6(a) (the "Indemnification Clause") (emphasis added).[3] In

addition to the foregoing language, the Indemnification Clause provides:

In addition to their other obligations under this Section 6(a), the Company and the Controlling Person, jointly and severally, agree that, as an interim measure during the pendency of any claim, action, investigation, inquiry or other proceeding arising out of or based upon any statement or omission, or any alleged statement or omission, described in this Section 6(a), they will reimburse each Underwriter on a monthly basis for all reasonable legal fees of other expenses incurred in connection with investigating or defending any such claim, action, investigation, inquiry or other proceeding, notwithstanding the absence of a judicial determination as to the propriety and enforceability of the Company's and/or the Controlling Person's obligation to reimburse the Underwriters for such expenses and the possibility that such payments might later be held to have been improper by a court of competent jurisdiction.

---

[3] In deciding a motion to dismiss, a court "may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." *ATSI Commc'ns v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). Because the Underwriters expressly reference and cite the Underwriting Agreement in the Cross-Complaint, the Court may properly consider it in connection with this motion.

*Id.* As shown above, the Indemnification Clause had two components: (1) an agreement to indemnify the Underwriters for any settlement or judgment they were obligated to pay based on their violation (or alleged violation) of Securities Act or Exchange Act; and (2) an agreement to reimburse the Underwriters for their legal expenses in connection with their alleged violations of such statutes. If enforced, the Indemnification Clause would thus permit the Underwriters to escape <u>any</u> liability for violations of the securities laws by shifting their responsibility to DYP and Guo.

Indemnification for liability under the securities law is generally not allowed by the courts. Given the risk that indemnification agreements will undermine the strong public policy underlying the anti-fraud provisions in the Securities Act and the Exchange Act, courts are reluctant to enforce them. Thus, in *Globus v. Law Research Service, Inc.*, 418 F.2d 1276 (2d Cir. 1969), *cert. denied*, 397 U.S. 913 (1970), the Second Circuit affirmed the district court's decision to set aside a jury's verdict granting the underwriters' claim for contractual indemnity. The Court stated that, where the underwriters had been found liable under section 12 of the 1933 Act, "to tolerate indemnity . . . would encourage flouting the policy of the common law and the Securities Act." *Id.* at 1288. The Court reasoned:

> Civil liability under section 11 and similar provisions was designed not so much to compensate the defrauded purchaser as to promote enforcement of the Act and to deter negligence by providing a penalty for those who fail in their duties. And Congress intended to impose a "high standard of trusteeship" on underwriters. . . . Thus, what Professor Loss terms the "in terrorem effect" of civil liability . . . might well be thwarted if underwriters were free to pass their liability on to the issuer. Underwriters who knew they could be indemnified simply by showing that the issuer was "more liable" than they (a process not too difficult when the issuer is inevitably closer to the facts) would have a tendency to be lax in their independent investigations. . . . Cases upholding indemnity for negligence in other fields are not necessarily apposite. The goal in such cases in to compensate the injured party. <u>But the Securities Act is more concerned with prevention than cure.</u>

*Id.* at 1288-89.

The Second Circuit noted that indemnification of an underwriter by an issuer, such as DYP, is "particularly suspect" *Id.* at 1289. This is because, when the underwriter is reimbursed by the issuer, "the recovery ultimately comes out of the pockets of the issuer's stockholders." *Id.* As the Court observed, many of those stockholders may be the very purchasers to whom the underwriter should have been initially liable. *Id.* Thus, the victims of the underwriters' negligence would be funding the underwriters' liability.

Other courts have adopted this reasoning. In *Laventhos, Krekstein, Horwath & Horwath v. Horwitch*, 637 F.2d 672 (9th Cir. 1980), the Ninth Circuit found that the underwriter of the issue of limited partnership interests was not entitled to indemnity from the controlling persons of the partnership with respect to an investors' suit alleging that the registration statement was false and misleading under the Securities Act. The Court held that the indemnity claim was properly dismissed because, "[i]n extending liability to underwriters and those who prepared misleading statements, the purpose of the Act is regulatory rather than compensatory, and permitting indemnity would undermine the statutory purpose of assuring diligent performance of duty and deterring negligence." *Id.* at 676.

In *Eichenholtz v. Brennan*, 52 F.3d 478 (3d Cir. 1995), the Third Circuit stated that, "[g]enerally, federal courts disallow claims for indemnification because such claims run counter to the policies underlying the federal securities acts." *Id.* at 484. The goal of the securities legislation "is encouraging diligence and discouraging negligence in securities transactions." *Id.* "These goals are accomplished 'by exposing issuers and underwriters to the substantial hazard of liability for compensatory damages.'" *Id.* (quoting *Globus*, 418 F.2d at 1289). The Court found that the policy against allowing indemnification extends to violations of sections 11 and 12 where the underwriter is merely negligent in the performance of its duties. *Id.* at 484-85.

As the Second Circuit did in *Globus*, the Third Circuit emphasized that the possibility of liability was necessary to encourage underwriters to fulfill their obligations under the securities laws.

> If the courts enforced an underwriter indemnification provision, it would effectively eliminate the underwriter's incentive to fulfill its investigative obligation. "The statute would fail to serve its prophylactic purpose that . . . underwriters make some reasonable attempt to verify the data submitted to them."

*Id.* at 485 (quoting Helen L. Scott, *Resurrecting Indemnification: Contribution Clauses in Underwriting Agreements*, 61 N.Y.U.L. Rev. 223, 245 (1986)). Thus, denying claims for indemnification "encourage[s] underwriters to exhibit the degree of reasonable care required by the 1933 and 1934 Acts." *Id.* (holding that district court did not abuse its discretion in approving settlement agreement that barred underwriters' potential indemnification claims because indemnification clauses in underwriting agreements were unenforceable).

Under *Globus*, this Court should dismiss the Underwriters' claim for contractual indemnity. The Second Circuit has clearly indicated that, at least in the context of claims under the securities statutes, it will not permit the enforcement of indemnity clauses in underwriting agreements because allowing indemnity under such circumstances is contrary to public policy. Indeed, the Underwriters' claims herein are "particularly suspect," inasmuch as they seek indemnification from DYP. *See Globus*, 418 F.2d at 1289. If the Underwriters were ultimately found to have harmed DYP's shareholders through violation of the securities laws, and were indemnified by DYP, the recovery would ultimately come "out of the pockets of . . . the very purchasers to whom the underwriter should have been initially liable." *Id.*

This is true for all claims the Underwriters might bring under the Indemnity Clause, whether for reimbursement of judgment or settlement amounts or reimbursement of litigation expenses. The Underwriters allege that they have incurred more than $565,000 in legal fees and

expenses to date in defending against the Plaintiffs' claims. If the Underwriters are found to have violated the securities laws, it is no less contrary to public policy to require the shareholders of DYP to reimburse the Underwriters for their legal expenses than to reimburse them for the amount of the judgment. Under Second Circuit precedents, the Indemnification Clause is unenforceable in its <u>entirety</u> because it purports to relieve the Underwriters of their liability under the securities laws.

### B.   The Underwriters' contribution claim is unnecessary and impermissible because the law grants the Underwriters a judgment credit.

The contribution claim (Count II) fails as a matter of law because it is duplicative of the judgment credit rights that the PSLRA and case law provide to the Underwriters. That should come to no surprise to the Underwriters given the voluminous briefs they previously filed with this Court demanding that their judgment credit rights be recognized. Aside from that, this Court has already recognized that the judgment credit rights that the Underwriters possess "eliminate" any need for a contribution claim. Transcript (7/24/13) at 8:24-9:1 [Dkt. #136]. As the Underwriters themselves have repeatedly emphasized, "[b]y ensuring that, at the end of the day, the non-settling defendants are not held responsible for any damages for which the settling defendants are proven liable, the judgment credit adequately compensates the non-settling defendants for their indemnity and contribution claims[.]" Underwriter Defs.' Mem. of Law in Opp. To Prelim. App. at 9 (quoting *Gerber*, 329 F.3d at 303) [Dkt. #119]. That is exactly what the Court here has already said.

Other courts within this District have come to the same conclusion on similar facts. In *Del-Val Fin. Corp. Secs. Litig.*, 868 F. Supp. 547 (S.D.N.Y. 1994), the plaintiffs brought claims under the Securities Act and Exchange Act against an auditor, alleging that the registration statement and prospectus contained material misstatements. *Id.* at 549. The auditor brought a

cross-claim for contribution against the issuer and certain of its officers and directors who had already settled with the plaintiffs, and those settling defendants moved to dismiss the contribution claim. *Id.* at 549-51. Because the settlement agreement contained a bar order coupled with a proportionate-share judgment credit provision, the court held that the cross-claim for contribution was unnecessary and dismissed it: "Because [the auditor] will not be required to pay more than its equitable share of any judgment [p]laintiffs may obtain against it, its contribution action against [s]ettling [d]efendants is unnecessary." *Id.* at 562; *see also id.* at 555 (explaining that contribution cross-claim was "unnecessary and impermissible").

The logic of *Del-Val* compels dismissal here. The Underwriters' contribution claim is unnecessary and impermissible in view of the fact that they will be entitled to a judgment credit at trial. Accordingly, the Underwriters' contribution claim (Count II) should be dismissed.

**C.    Public policy prohibits the Underwriters from seeking indemnity from the DYP Defendants for the Underwriters' alleged violations of the Securities Act.**

In Count III of the Cross-Complaint, the Underwriters purport to bring a claim for implied indemnification against the DYP Defendants. Cross-Complaint at ¶¶ 50-53 [Dkt. #141]. "Indemnification is a claim by which the party held legally liable shifts the entire loss to another." *KBL Corp. v. Arnouts*, 646 F. Supp. 2d 335, 344 (S.D.N.Y. 2009) (internal quotations omitted). Indemnification may arise expressly by contract or by implication. The Underwriters do not plead any facts that would give rise to an implied right of indemnification against any of the DYP Defendants.[4]   As the following demonstrates, however, this claim fails because courts refuse, on public policy grounds, to indemnify underwriters for claims under the Securities Act.

---

[4] The Underwriters do not identify any contract under which Diao, Cai, or Xie would purportedly owe a duty to indemnify the Underwriters. The Underwriters' contractual claim for indemnity against DYP and Guo was discussed *supra*, at pages 9-14.

As previously shown, courts have consistently held that indemnification of an underwriter for violations of the Securities Act is against the public policy advanced by that statute. *Globus*, 418 F.2d at 1288 ("underwriters should be . . . prohibited from obtaining indemnity from the issuer"); *Eichenholtz*, 52 F.3d at 483 ("federal courts disallow claims for indemnification because such claims run counter to the policies underlying the federal securities acts"); *Laventho*, 637 F.2d at 676 ("permitting indemnity would undermine the statutory purpose of assuring diligent performance of duty and deterring negligence"); *Odette v. Shearson, Hammill & Co.*, 394 F. Supp. 946, 954 (S.D.N.Y. 1975) ("With respect to the plaintiffs' claim under § 12(2) of the Securities Act, I am convinced that it would be inconsistent with the policy of the federal securities laws to allow indemnification to [the underwriter]."); *see also Bonacci v. Lone Star Intern. Energy, Inc.*, No. 98 Civ. 0634 (HB), 1999 WL 76942, at *5 (S.D.N.Y. Feb. 16, 1999) ("With respect to the indemnity claim, a party may not be indemnified for a federal securities fraud violation."). Given this, courts have not hesitated to dismiss claims for indemnification at the pleading stage. *See, e.g., Bonacci*, 1999 WL 76942, at *5; *Odette*, 394 F. Supp. at 957.

The reasoning of these cases bars the Underwriters' implied indemnification claim against the DYP Defendants. Plaintiffs assert Section 11 and 12(a)(2) claims against the Underwriters on the theory that they were negligent for not detecting the alleged misstatements or omissions in DYP's Registration Statement and Prospectus. Complaint at ¶ 82 [Dkt. #64]. In the Cross-Complaint, the Underwriters allege in conclusory fashion that they "had no reasonable ground to believe and did not believe" that DYP's filings contained any misstatements or omissions. Cross-Complaint at ¶ 28 [Dkt. #141]. They go on to claim that DYP and the individual defendants were "primary actors with knowledge of the facts and events allegedly misrepresented[.]" *Id.* at ¶ 52.

But, even if it were true that the Underwriters did not have actual knowledge of the alleged misstatements and omissions, and that the DYP Defendants did (which is decidedly not the case), the Underwriters would still <u>not</u> have a right to seek indemnification under the reasoning of *Globus* and its progeny. Accordingly, the Underwriters claim for indemnification (Count III) should be dismissed.

### D.   The Underwriters cannot maintain an action for breach of contract against DYP.

In Count IV of the Cross-Complaint, the Underwriters attempt to assert a claim against DYP for breach of contract. Cross-Complaint at ¶¶ 54-59 [Dkt. #141]. The Underwriters allege that, in the Underwriting Agreement, DYP represented that the Registration Statement and Prospectus would not include any untrue statements of material fact. *Id.* at ¶ 55. The Underwriters allege further that, if they are found liable to Plaintiffs, it will necessarily indicated that these documents did contain untrue statements of material fact, and that DYP would therefore have breached its contractual obligation to the Underwriters. This claim is subject to dismissal on its face for several reasons.

First, if the Underwriters are found liable to the Plaintiffs, it will be because a jury finds that they failed to fulfill their statutory duty to make a reasonable investigation to ensure that DYP's Registration Statement and Prospectus did not contain any material misstatements or omissions. This duty is independent of DYP's duty to provide truthful information in such documents.

Second, this claim for breach of contract is clearly duplicative of the claim for contractual indemnification which, as shown above, is not permitted in the context of claims against underwriters for violations of their statutory obligations under the securities laws. Permitting the

Underwriters to pursue a claim against DYP for breach of contract will undermine the goals of the securities laws no less than allowing the Underwriters to pursue a claim for indemnification.

Third, to the extent the Underwriters seek damages that are not duplicative of the relief sought in their claims for indemnification, such damages are not permitted in a claim for breach of contract. In their claim for breach of contract, the Underwriters claim that their damages include "damages incurred in the ongoing defense of this action" (which are clearly duplicative of their alleged indemnification rights), as well as "damage to their reputations in the investment banking community." Cross-Complaint at ¶ 59 [Dkt. #141]. In general, damages to reputation "are not recoverable in a breach of contract action under New York law." *Ainbinder v. Money Center Fin. Group, Inc.*, 2013 WL 1335997, *10 (E.D.N.Y. Feb. 28, 2013) (citing *Spithogianis v. Haj–Darwish*, 2008 WL 82188, at *5 (S.D.N.Y. Jan. 7, 2008), *adopted by Ainbinder v. Money Center Fin. Group*, 2013 WL 1335893 (E.D.N.Y. Mar. 25, 2013)); *Soto v. Federal Express Corp.*, 2008 WL 305017, at *7 (E.D.N.Y. Feb. 1, 2008) ("It is well-settled in New York that a claim for loss of reputation arising from a breach of contract is not actionable."); *MacArthur Construction Corp. v. Coleman*, 91 A.D.2d 906, 906, 457 N.Y.S.2d 530, 531 (1st Dep't 1983) (finding claim seeking damages for injury to reputation not actionable); *Karestos v. Cheung*, 670 F.Supp. 111, 115 (S.D.N.Y.1987) (precluding recovery for damage to plaintiff's reputation as a result of the breach); *Dember Const. Corp. v. Staten Island Mall*, 56 A.D.2d 768, 392 N.Y.S.2d 299 (1st Dep't 1977) (claim seeking damages to plaintiff's reputation arising out of breach of contract not actionable)).

The only exception to this rule is that damages to reputation may be available where a plaintiff can prove "specific business opportunities lost as a result of its diminished reputation." *See Smith v. Positive Productions*, 419 F .Supp. 2d 437, 453 (S.D.N.Y. 2005) (quoting *I.R.V.*

*Merch. Corp. v. Jay Ward Prods., Inc.*, 856 F.Supp. 168, 175 (S.D.N.Y. 1994); *Karestos*, 670 F.Supp. at 115); *see also Saxton Communication Group, Ltd. v. Valassis Inserts, Inc.*, 1995 WL 679256, at *2 (S.D.N.Y. Nov. 15, 1995) (damages for loss of reputation available if specifically proven). In this case, the Underwriters fail to allege any specific business opportunities lost as a result of the alleged damage to their reputations in the business community. Accordingly, the Underwriters' claim for breach of contract against DYP should be dismissed.

### E.    The Underwriters do not, and cannot, plead a special relationship to sustain their negligent misrepresentation claim.

In Count V, the Underwriters attempt to assert a negligent misrepresentation claim against the DYP Defendants. Cross-Complaint at ¶¶ 60-65 [Dkt. #141]. "Under New York law, a plaintiff asserting a claim for negligent misrepresentation must allege, *inter alia*, that 'the defendant had a duty, as a result of a special relationship, to give correct information.'" *Fed. Housing Fin. Agency v. UBS Am., Inc.*, 858 F. Supp. 2d 306, 334 (S.D.N.Y. 2012) (quoting *Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000)).

> In a commercial context, liability does not attach as a matter of course for merely negligent statements; rather, it is imposed "only on those who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified."

*UBS*, 858 F. Supp. 2d at 334 (quoting *Kimmell v. Schaefer*, 89 N.Y.2d 257, 263 (1996)). "Courts regularly hold as a matter of law that an arm's length business arrangement between sophisticated and experienced parties cannot given rise to a 'special relationship.'" *UBS*, 858 F. Supp. 2d at 334; *see, e.g., id.* (finding no special relationship between issuer of mortgage-backed securities and government sponsored entity that purchased, packaged, and marketed mortgage-backed securities); *MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*, 87 A.D.3d 287, 296 (1st Dep't 2011) ("Because MBIA has failed to allege facts showing that these sophisticated

commercial entities engaged in anything more than an arm's length business transaction, the negligent misrepresentation claim was properly dismissed."). In *Flaherty Funding Corp. v. Johnson*, 105 A.D.3d 1445 (4th Dep't 2013), the court held that no special relationship existed between the defendant-corporation that provided underwriting services for the plaintiff-corporation with respect to a mortgage loan. *Id.* at 1446. Based on this, the court reversed the trial court's order and instructed that the negligent misrepresentation claim be dismissed as a matter of law on remand. *Id.*

Here, as in *Flaherty*, the negligent misrepresentation claim fails as a matter of law because the Underwriters fail to plead facts showing a special relationship. Indeed, the relationship between the Underwriters and DYP is the quintessential arm's-length business arrangement. The Underwriters without question are sophisticated entities involved on a daily basis in conducting due diligence of issuers and selling their securities. Indeed, the Underwriters cannot credibly maintain that DYP was in a "special position of confidence and trust" *vis-a-vis* the Underwriters where the Underwriters were statutorily bound to conduct a reasonable investigation of the statements in DYP's offering documents. *See In re WorldCom, Inc. Sec. Litig.*, No. 02 Civ. 3288 (DLC), 2005 WL 408137, at *3 (S.D.N.Y. Feb. 22, 2005) ("The law imposes on underwriters the vital role of assuring the accuracy of registration statements."); *see also* 15 U.S.C. § 77k(b)(3).

The lack of any special relationship is underlined by the Underwriting Agreement between the Underwriters and DYP, which expressly vitiates any fiduciary, advisory, or agency relationship between the parties:

> *Absence of Fiduciary Relationship.* The Company acknowledges and agrees that: (a) the Representative[5] has been retained solely to act as an underwriter in connection with the sale of the Shares and that *no fiduciary, advisory or agency relationship between the Company and the Representative has been created in respect of any of the transactions contemplated by this Agreement, irrespective of whether the Representative has advised or is advising the Company on other matter* . . . .

Ex. 3, Underwriting Agreement at § 13 (second emphasis added); *see also JP Morgan Chase Bank v. Winnick*, 350 F. Supp. 2d 393, 401 (S.D.N.Y. 2004) (finding no special relationship, stating "[w]ithout the obligation imposed under the terms of the Credit Agreement, the defendants would be under no obligation to use special care to provide accurate financial information to the Banks; indeed, if not for the existence of the contract, they would have had no relationship to the Banks whatsoever"); *LaSalle Bank v. Citicorp Real Estate*, No. 02 Civ. 7868 (HB), 2003 WL 1461483, at *3-6 (S.D.N.Y. Mar. 21, 2003). Accordingly, the Underwriters' claim for negligent misrepresentation (Count V) should be dismissed.

## III.   ALTERNATIVELY, THE COURT SHOULD STAY THE UNDERWRITERS' CROSS-CLAIMS UNTIL THE PLAINTIFFS' CLAIMS AGAINST THE UNDERWRITERS ARE RESOLVED.

As shown above, the Court should dismiss the Underwriters' cross-claims against the DYP Defendants for six reasons: (1) the bar order in the preliminarily-approved Settlement Agreement prohibits these claims; (2) the Indemnification Clause upon which the Underwriters base their claims against DYP and Guo for contractual indemnity is unenforceable as a matter of law; (3) the Underwriters' claim for contribution is unnecessary because the PSLRA and case law provide the Underwriters with rights to a judgment credit in the event they are found liable to Plaintiffs; (4) courts do not permit underwriters to bring claims for implied indemnity for violations of the securities laws; (5) the Underwriters' claim for breach of contract is duplicative

---

[5] Cross-Plaintiff Piper Jaffray & Co. acted as the "Representative" for the several underwriters to the sale of shares. Ex. 3, Underwriting Agreement at p. 1.

of their claim for indemnification or seeks damages not permitted under New York law; and (6) the Underwriters cannot plead the existence of a special relationship necessary to bring a negligent misrepresentation claim.

Should the Court not be inclined to dismiss these claims, it should, in the alternative, stay the claims until the Plaintiffs' claims against the Underwriters are resolved. A stay would be appropriate because, until the Underwriters pay a judgment or settlement with the Plaintiffs, it is unclear whether they will incur any liability at all, or the extent of that liability. Indeed, some courts have held that a contribution claim does not event accrue until the party seeking contribution has paid a judgment. *See, e.g., Katz v. China Century Dragon Media, Inc.*, 287 F.R.D. 575, 581 (C.D. Cal. 2012) (dismissing contribution claim without prejudice because "a cause of action for contribution does not accrue until a judgment has been paid"). Because the Underwriters' claims against the DYP Defendants seek damages based on the amount of the Underwriters' liability to Plaintiffs, or the total costs incurred by the Underwriters in defending against Plaintiffs' claims, should this Court decline to dismiss the Underwriters' claims at this time, it would promote judicial efficiency to await the outcome of the Plaintiffs' case against the Underwriters before attempting to evaluate the Underwriters' case against the DYP Defendants.

## CONCLUSION

For all the foregoing reasons, the DYP Defendants' motion to dismiss the Underwriters' claims for contractual indemnification, contribution, implied indemnification, breach of contract, and negligent misrepresentation (Counts I, II, III, IV, and V), should be granted, and those claims dismissed with prejudice. In the alternative, the Court should stay the Underwriters' claims until after the Plaintiffs' claims against the Underwriters under the original Complaint have been resolved.

Dated: October 28, 2013

CROWE & DUNLEVY, P.C.

By:   /s/ Harry A. Woods, Jr.
      Harry A. Woods, Jr., Esq.
      Bruce W. Day, Esq.
      Mary H. Tolbert, Esq. (*pro hac vice pending*)
      20 North Broadway Avenue, Suite 1800
      Oklahoma City, OK  73102
      Tel:  (405) 235-7700
      Fax: (405) 239-6651

      *Attorneys for Duoyuan Printing, Inc., Wenhua Guo, Xiqing Diao, Lianjun Cai, and Punan Xie*

23

**CERTIFICATE OF SERVICE**

I, Harry A. Woods, Jr., hereby certify that on this 28th day of October, 2013, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing.  Based on the records currently on file, the Clerk of the Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Alfred Robert Pietrzak @ rpietrzak@sidley.com
Bruce W. Day @ bruce.day@crowedunlevy.com
Fei-Lu Qian @ flqian@pomlaw.com
Harry Arthur Woods, Jr. @ harry.woods@crowedunlevy.com
James Ancone @ jancone@mayerbrown.com
Jason Samuel Cowart @ jscowart@pomlaw.com
Jeremy Alan Lieberman @ jalieberman@pomlaw.com
Joel M. Mitnick @ jmitnick@sidley.com
Joseph De Simone @ jdesimone@mayerbrown.com
Laurence Matthew Rosen @ lrosen@rosenlegal.com
Lawrence Allen Steckman @ lsteckman@evw.com
Lionel Z. Glancy @ lglancy@glancylaw.com
Marc Ian Gross migross@pomlaw.com
Michael Krauss @ mkrauss@faegre.com
Phillip C. Kim @ pkim@rosenlegal.com
Robert Howard Rickner @ rrickner@evw.com
Robert James Hodgson @ rjhodgson@pomlaw.com
Susan Elizabeth Huntsman @ susan.huntsman@crowedunlevy.com
Tamar Aliza Weinrib @ taweinrib@pomlaw.com
Tara A. LaClair @ tara.laclair@crowedunlevy.com
Ted Gary Semaya @ tsemaya@evw.com
Terri Ann Mazur @ tmazur@mayerbrown.com
Terri L. Combs @ terri.combs@faegrebd.com
Thomas Andrew Paskowitz @ tpaskowitz@sidley.com
Thomas J. Mullaney @ tmullaney@lsmesqs.com
Timothy William Brown @ tbrown@rosenlegal.com

**Service on the following will be by regular U.S. Mail:**

Patrick Vincent Dahlstrom
Pomerantz Haudek Block Grossman & Gross LLP
100 Park Avenue, 26th Floor
New York, NY 10017

s/Harry A. Woods, Jr.
Harry A. Woods, Jr.

2501193.1